## JONES v. BRANTLEY.

[83 South. 802, In Banc. No. 20990.]

1. ATTORNEY ENTITLED TO RETAINER THOUGH SOME SERVICES PERFORMED ON SUNDAY.
   Where an attorney made a retainer contract with his client on a secular day and stayed in town for ten days at the request of his client, neglecting to attend to other matters waiting to close up the business of his client, he was entitled to recover a reasonable fee as a retainer and a reasonable amount for his time in remaining in town instead of leaving to attend to other matters, though some of the services rendered were performed on Sunday in violation of section 1366, Code 1906 (Hemingway's Code section 1102), such a contract not being an indivisible one.

2. SUNDAY. *Services of attorney in rearranging partnership business not work of necessity or charity.*
   Services rendered by an attorney in rearranging a partnership business is not a work of necessity or charity under Code 1906, section 1366 (Hemingway's Code section 1102) prohibiting the performance of work on Sunday except housework or other work of necessity or charity.

3. SUNDAY. *Certain legal services may be performed on Sunday.*
   There are some services that an attorney may lawfully perform on Sunday, as the law expressly authorizes certain suits and other legal matters to be done on Sunday and where his contract is not an indivisible one the performance of other work on Sunday prohibited by law does not vitiate the entire contract.

121 Miss.—46.

Appeal from the circuit court of Humphreys county. Hon. H. H. Elmore, Judge.

Suit by Jesse D. Jones against J. G. Brantley. From a judgment for defendant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*Mayes & Potter,* for appellant.

This was a contract, according to the testimony of Mr. Jones in the case, entered into upon a week day, and while some things were done on Sunday, some conferences held, etc., most of the work was done on week days.

In this suit several different performances on the part of Mr. Jones are clearly shown in the testimony, and while the suit is for a lump sum, nevertheless, under proper instructions, if a portion of the work done by Mr. Jones was illegal because such work was done on Sunday in violation of our statute, certain other items shown by the evidence, and several from the others were susceptible of being valued separately and apart from the items that might be illegal.

As stated above, there is one item set out in the evidence of Mr. Jones; that of remaining in Belzoni at the request of the defendant for a period of ten days. This item for which if Mr. Jones' evidence should have been believed by the jury, would have clearly entitled the plaintiff to recover, is now tainted by the violation of the Sunday law. The same is true in the drawing up of the bill of sales, notes, etc., and advice given relative thereto, and other separate items set out in the evidence of the plaintiff.

It is held in 9 Cyc., page 569, that: "Where the agreement of several promises based on several considerations, the fact that one or more of the considerations are illegal will not avoid all the promises, if those which are made of illegal considerations are severed from the others. Thus where goods are sold at a separate price

for each article, and the sale of some of the articles is illegal, an action will lie nevertheless for the price of any of the other articles. The same principle applies in proper cases to contracts to pay for labor or services."

We, therefore, insist that at all events it should have been submitted to the jury whether or not Mr. Jones was entitled to recover for those items of work shown by the testimony to have been done on week days under a contract made on week days. There were separate promises based on several considerations. At least in the sense that the consideration for each and every item of work was necessarily a severable consideration, and while no bill of particulars was set out in the declaration, yet the defendant did not ask for a bill of particulars, and on a new trial if it is so desired, the defendant can make a motion to require the plaintiff to particularize the different items of work for which he expects recovery, and if there are items which are illegal because performed on the Sabbath day these items are readily severable from the items of work performed on week days.

Where a contract for work is made on Sunday but performed on week days, while the Sunday contract cannot be enforced, the employee can recover on a *"quantum meruit"* for services already rendered on week days. *Thomas* v. *Hatch,* 53 Wis. 296, 10 N. W. 393.

We submit that this is a case that should have been submitted to a jury on the question of whether or not Mr. Jones should recover for his services, especially for those items of service which there is no evidence to show were in any way tainted by the violation of the Sunday law.

*Cashin & Murphy,* for appellee.

"Contracts to perform something prohibited by statute are void whether made on Sunday or on a

secular day—entire contracts providing for part performance are void where the acts to be performed on Sunday are prohibited by statute; and no recovery can be had for the part performed on a secular day." 27 Am. & Eng. Ency. Law, 410.

According to the well-settled and firmly-established law of Mississippi, a contract of this nature made for the performance of work on Sunday will not be enforced by the courts, but will be treated as an absolute non-action, a legal nullity, and the parties left where they have placed themselves. It is a principle of such universal respect as to have now almost, if not quite, ripened into an axiom of the law, that a contract made for the performance of any manner of work upon the Sabbath is void as against good morals and in contravention of the statute. These principles we suppose to be of such an elementary nature and so familiar to everyone that we do not here burden the court with a citation of the authorities sustaining them. And such a case is this, according to the testimony of appellant and the interpretation placed upon it by counsel.

If appellant is entitled to any relief at all then for services alleged to have been rendered on secular days (in connection with the same subject-matter, be it remembered), and in furtherance of Brantley's design and purpose as disclosed on the Sabbath, such relief would necessarily depend upon the severability of the contract into a number of unrelated, separate, component parts, or into a number of disassociated, disconnected, independent contract, which we say was impossible from the very nature of the contract itself, and which severability features will be discussed later in this brief.

In our own case of *Kountz* v. *Price & Dixon,* 40 Miss. 341, we have an action for recovery on a contract executed in consideration of an agreement between appellant and appellees for the exchange of salt for cotton,

pound for pound, the complainant alleging the delivery of the salt to defendants and the execution by them of a due bill in favor of complainant. The suit was defended on the ground that the agreement being made and the salt delivered on Sunday (although it was admitted that the due bill or contract was subsequently executed on a secular day). It was void as against good morals and in violation of the Sunday statute. The court held that the contract was void and the subsequent execution of the due bill on a secular day could not affirm the previous contract so as to validate it and relieve it of its taint of illegality, and that the complainant could not recover back his salt or the value thereof, and refused to overrule principles repeatedly and invariably recognized by this court. The opinion goes on to say:

"The principle of public policy is this," says Lord Mansfield, in *Holman* v. *Johnson* (Cowp), "*Ex dolo malo non oritur actio.* No court will lend its aid to a man who founds his cause of action upon an immoral or illegal act. If from the plaintiff's own stating, or otherwise, the cause of action appears to arise *ex turpi causa,* or the transgression of a positive law of the country, then the court says he has no right to be assisted." See *Cuthbert* v. *Haley,* 8 J. R. 394.

Not to cite the almost numberless authorities in England and this country affirming this principle, and applying it to all sorts of contracts founded on illegal considerations, and to all phases into which they passed we will refer to a few of numerous cases upon the subject in this court. *Collins* v. *McCargo,* 6 S. & M. 128; *Armstrong* v. *Toler,* 11 Wheat. (U. S.) 258, 6 L. Ed. 468; *Wooten* v. *Miller,* 7 S. & M. 386; *Coulter* v. *Robertson,* 14 S. & M. 29; *Adams* v. *Rowan,* 8 Ib. 638; *Torrey* v. *Grant,* 10 Ib. 97."

Having already established that the original contract in the case here presented on appeal was entered into

on Sunday, the only distinction to be drawn then between it and the *Kountz case, supra,* is that in the latter, all the salt was delivered on Sunday, while in this case only part of the services was actually performed on Sunday.

This, therefore, squarely confronts us with the propositions whether the court will lend its aid to enforce a contract. First: Where it grows immediately out of an illegal or immoral act; Second: Where it is connected with an illegal act; Third: Where only a part of the consideration is illegal and out of these grows the question; Fourth: Whether illegal contracts can be divided and held valid in part and invalid in other parts.

We respectfully refer the court to the cases of *Wooten* v. *Miller,* 7 S. & M. 380, and *Armstrong* v. *Toler,* 11 Wheat (U. S.) 258, (6 L. Ed. 468), for an answer the first three of the propositions, *Craig* v. *Missouri,* 4 Pet. 410; *Gray* v. *Hook,* 4 N. Y., 4 Comst. 449; *Nellis* v. *Clark,* 4 Hill. 424; *Handy* v. *Globe Pub. Co.,* 4 L. R. A. 466, 16 A. S. R. 695; *Perkins* v. *Cummings,* 2 Gray, 258; *McNamara* v. *Gargett,* 68 Mich. 454, 13 Am. St. Rep. 355; *Santa Clara, etc., Co.* v. *Hayes,* 76 Cal. 387, Am. St. Rep. 211.

While we have no access to the case of *Thomas* v. *Hatch,* 53 Wis. 296, 10 N. W. 393, the only case cited in appellant's brief, and must accept counsel's statement of same, still it is conceded that the rule here stated is the law as declared in some isolated cases by the courts of other jurisdictions; but the better, and far more generally accepted and recognized doctrine. is that announced in a long line of decisions of our own courts and repeatedly affirmed by the courts of other states, and is directly contradictory of this rule laid down by the Wisconsin court. *Block* v. *McMurry,* 56 Miss. 219.

It will be seen from an examination of footnote No. 41, on page 569,. of 9 Cyc., the only other reference con-

tained in counsel's brief, that this principle of sever-ability of contracts and considerations which it is there stated may apply in proper cases to contracts to pay for labor or services, has reference to contracts in no-wise connected with, related to; and therefore not tainted by, the original illegal contract. *Johnson* v. *Dohlgren*, 31 N. Y. App. Div. 204.

It may be contended that the defendant was a party to, implicated in, and the beneficiary of, the illegal act as a reason why he should not have the benefit of it as a defense here, but this objection is without legal force. *Holman* v. *Johnson*, — Cowp. —.

As To Recovery on "*Quantum Meruit.*"

Now as to the argument that plaintiff is entitled to recover of a *quantum meruit;* we submit that this position is untenable. *Quantum meruit* is based upon what in law is termed an implied contract to pay what is deserved, and is in fact nothing more than an implied contract, the only difference between which and an express contract being in the mode or manner of proof. Obviously then as stated in 2 Ruling Case Law, p. 1046.

"Every objection to permitting a recovery upon an expressed contract applies with equal force to a recov-ery upon a *quantum meruit,* and this is true even when the services are not intrinsically illegal, but are im-proper and contrary to public policy, because of cir-cumstances under whch they are rendered." ..

It was not a new contract, founded upon a different consideration, but was related to, directly connected with, and grew immediately out of the original Sunday contract, and as stated in *Wooten* v. *Miller,* and in *Armstrong* v. *Toler, supra*: "Where the contract grows immediately out of, and is connected with, illegal or immoral act, a court will not lend its aid to enforce it," unless the promise be unconnected with the illegal act and is found upon an entirely new consideration.

Conclusion: In conclusion, if the court holds that the original contract of employment had its inception on a week day, yet it must be assumed from the testimony of plaintiff as to his employment that it was contemplated at the time and understood between the parties that most, or at least part of the work was to be done on Sunday, and that the rendition of such services on Sunday, tainted the whole contract with illegality of which it could not be purged by any subsequent act of the parties, and that the contract being one of entirety and not capable of being separated into several distinct and smaller contracts founded on new and different considerations the whole contract must fail.

But, if the contract, as we are firmly convinced, had its beginning on the Sabbath, as against good morals and the law of the land, was partly performed on the same day; and other services were rendered on subsequent Sundays and secular days, as anticipated at the time of the general employment, all being rendered in connection with and furtherance of, and growing immediately out of the same illegal contract and subject-matter, and looking to the end accomplished, then we insist that there was no issue for the jury; that the contract was entire, inseparable and indivisible, and tainted throughout with its original illegality. See *Handy* v. *St. Paul Globe Pub. Co.*, 4 L. R. A. 466; 16 Am. St. Rep. 695 (and note); *Williams* v. *Hasting*, 59 N. Y. 373. That it is not susceptible of ratification in whole or in part; that, therefore, a recovery on *quantum meruit* will not lie, and the peremptory instruction granted to defendant was based upon a correct interpretation of the law, and not error.

We respectfully submit, therefore, that the services herein rendered do not come within any of the exceptions of section 1102 of Hemingway's Code (sec. 1366, Code of 1906), which, as amended by ch. 25 of the laws of 1917, provides that: "If any person on the first

day of the week commonly called Sunday, shall himself labor at his own or any other trade, calling or business, or shall employ his apprentice or servant in labor or other business, except it be in the ordinary household offices of daily necessity or other work of necessity or charity, he shall, on conviction, be fined not more than twenty dollars for every offense deeming every apprentice or servant so employed as constituting a distinct offense; but nothing in this section shall apply to labor on railroads or steamboats, telegraph or telephone lines, street railways or in the business of livery stable, garage or gasoline stations, meat market or ice house.''

That judgment of the court below should not be disturbed, because so to do would tend to destroy the effect of a most beneficent statute founded upon the divine law, and wisely intended to promote public morals and induce the observance of the duties of religion in society.

ETHRIDGE, J., delivered the opinion of the court.

Appellant sued the appellee for professional services as an attorney for the sum of five hundred dollars, alleging that the appellee was engaged in a mercantile business in a partnership, and that he desired the professional services of plaintiff in re-arranging or adjusting the partnership business, and that the value of the stock, etc., involved in the mercantile business amounted to thirty thousand dollars, and that the services so rendered were reasonably worth five hundred dollars.

The defendant filed the general issue and a special plea alleging in the special plea that the contract and legal services were entered into and performed on Sunday, and that the said services were in violation of the laws of the state of Mississippi and would not support an action. He also gave notice under the general issue to the same effect and alleged that the employment was

gross, entire, and not divisible, and in such notice alleged that thereafter further services in connection with said matter were rendered by the said plaintiff on Sunday, the 23rd day of June, 1918, and on secular days thereafter, to which said plea and notice under the general issue the plaintiff in his replication said that the said contract was not entered into on Sunday as alleged. At the conclusion of the evidence the court gave a peremptory instruction for the defendant, and judgment was entered thereon for the defendant, from which judgment this appeal is prosecuted.

There is a conflict in the evidence between the plaintiff and the defendant as to whether the contract was entered into on Sunday, but the plaintiff admits that he did some of the work and had certain consultations in reference thereto on Sunady. The testimony of plaintiff with reference to employment in part is as follows:

"Some time along the middle of June, 1918, last year, one day along about Thursday or Friday of the week, Mr. T. L. Gilmer and myself were standing on the corner talking by Parker & Parker's store. Mr. Brantley walked up and spoke to us and stood there and talked a few minutes about different things, and said to me, 'I want to see you and talk to you a little.' I said, 'All right.' He said, 'Clint Abrams and two or three other traveling men know you pretty well and said you were a good lawyer, and I have some business I want you to attend to.' I said, 'All right.' "

He further testified that Brantley asked him would he be in his office on Sunday; that he usually attended to such things on Sunday, and that he replied that he would be if Brantley wanted to see him; that he did business and did some writing in reference to the said business; that it was necessary for them to see the other partner in reference to the new contract; and that Brantley requested the plaintiff not to leave town, as he wanted him to see his partner and do the talking when

his partner came to town. Plaintiff testified further that he waited some ten days for Brantley's partner to come because of Brantley's request, and that he neglected to make certain trips and to attend to certain other business because of a request of Mr. Brantley that he would not leave town.

It further appears that the plaintiff drew the contract of partnership between Brantley and his partner, or rather closed their business by a contract, that there was no agreement about the amount of the fee, but that after the business was concluded he sent his statement of his fee to the defendant, to which the defendant failed to reply, and he subsequently sent other statements and finally wrote Mr. Brantley:

That if the fee was not all right he would like to know about it. "I am due the courtsey of some attention in the matter of at least an explanation of why the delay of payment."

To this the defendant replied: "I am in receipt of your bill for two hundred and fifty dollars, also note what you say and fully intended to see you and talk with you about this bill, but owing to illness and being very much overworked have not been able to get to this. However, I want to say to you I think your charges are entirely too much. I would be glad to pay you what is right as soon as we can get this matter straightened out."

The plaintiff's testimony and that of other lawyers shows that the services rendered were reasonably worth five hundred dollars, but a peremptory instruction was given for the defendant on the theory that the services were rendered on Sunday in violation of section 1366, Code of 1906 (section 1102, Hemingway's Code), which reads as follows:

"1366. Sabbath; Violations of Generally.—If any person, on the first day of the week, commonly called Sunday, shall himself labor at his own or any other trade, calling, or business, or shall employ his apprentice or ser-

vant in labor or other business, except it be in the ordinary household offices of daily necessity, or other work of necessity or charity, he shall, on conviction, be fined not more than twenty dollars for every offense, deeming every apprentice or servant so employed as constituting a distinct offense; but nothing in this section shall apply to labor on railroads or steamboats, telegraph or telephone lines, street railways or in the business of a livery stable, meat market or ice house.''

The plaintiff's testimony as we view it shows the retainer contract between the plaintiff and his client was made on a secular day, and his testimony shows further that he stayed in town for ten days at the request of defendant, neglecting to attend to other matters, waiting to close up the business for the defendant. It shows that some of the services were rendered on Sunday but the contract is not shown to have been made on Sunday so far as the plaintiff's testimony is concerned. The plaintiff was entitled to recover a reasonable fee as a retainer, and a reasonable amount for his time in waiting in Belzoni at the request of the defendant, if his testimony as to these facts is believed by the jury.

It is our opinion that the services rendered on Sunday as shown in this record were not a work of necessity or charity in the meaning of the statute. There are some services that an attorney may lawfully perform on Sunday, as the law expressly authorizes certain suits and other legal matters to be done on Sunday. We do not think the contract an indivisible one. There was no contract for the gross amount, but plaintiff was depending upon the value of the retainer and particular services performed under the retainer, and for such time as he was detained in Belzoni on secular days. This view of the law, we think, is supported by *Duggan* v. *Champlin,* 75 Miss. 441, 23 So. 179; *W. U. Tel. Co.*

v. *McLaurin,* 70 Miss. 26, 13 So. 36; and *Campbell* v. *Davis,* 94 Miss. 164, 47 So. 546, 19 Ann. Cas. 239.

The judgment of the court below is reversed, and the cause remanded for a new trial in accordance with this opinion.

*Reversed and remanded..*

SYKES, J., dissents.